Nos. 23-13360; 23-13361; 23-13362

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

**DAVID J. SHAFER, SHAWN STILL, CATHLEEN LATHAM**
**Appellants,**
v.
**STATE OF GEORGIA,**
**Appellee.**

_____

**On Appeal from the United States District Court
For the Northern District of Georgia
No. 1:23-cv-03720-SCJ; No. 1:23-cv-03792-SCJ; No.
1:23-cv-03803-SCJ;
Hon. Steve C. Jones**

_____

**APPELLANTS' JOINT REPLY BRIEF**

_____

Craig A. Gillen
Georgia Bar No. 294838
Anthony C. Lake
Georgia Bar No. 431149
**GILLEN & LAKE LLC**
400 Galleria Parkway, Suite 1920
Atlanta, Georgia 30339
(404) 842-9700
cgillen@gwllawfirm.com

Holly A. Pierson
Georgia Bar No. 579655
**PIERSON LAW LLC**
171 17th Street, Suite 1550
Atlanta, GA 30363
(404) 353-2316
hpierson@piersonlawllc.com

*Counsel for Appellant David J.
Shafer*

Thomas D. Bever
Georgia Bar No. 055874
W. Cole McFerren
Georgia Bar No. 409248
**Smith, Gambrell & Russell, LLP**
1105 W. Peachtree St., NE, Ste. 1000
Atlanta, GA 30309
(404) 815-3500
tbever@sgrlaw.com
cmcferren@sgrlaw.com

*Counsel for Shawn Still*

William G. Cromwell
Georgia Bar No. 197240
**CROMWELL LAW, LLC**
400 Galleria Parkway, Suite 1920
Atlanta, GA 30339 / (678) 384-5626
bcromwell@cartercromwell.com

*Counsel for Cathleen Latham*

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

**STATE OF GEORGIA,**

**v.**

**DAVID SHAFER**

**Case No: 23-13360-B**

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Appellants file this Certificate of Interested Persons and Corporate Disclosure Statement, listing all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party, as follows:

Alex M. Bernick, Counsel for Appellee

Thomas Bever, Counsel for Appellant Shawn Still

Bondurant Mixson & Elmore LLP, Counsel for Appellee

Paul Clement, Counsel for Mark Meadows

Clement & Murphy, LLP, Counsel for Mark Meadows

William "Bill" Cromwell, Counsel for Appellant Cathleen Latham

Anna G. Cross, Counsel for Appellee

Cross Kincaid, Counsel for Appellee

C-1

John E. Floyd, Counsel for Appellee

Craig A. Gillen, Counsel for Appellant David J. Shafer

Gillen & Lake LLC, Counsel for Appellant David J. Shafer

The Honorable Steve C. Jones, United States District Judge

Anthony C. Lake, Counsel for Appellant David J. Shafer

Cathleen Latham, Appellant

Zachary Lustbader, Counsel for Mark Meadows

Cole McFerren, Counsel for Appellant Shawn Still

McGuire Woods, LLP, Counsel for Mark Meadows

Mark Meadows, Appellant in Related Case

John S. Moran, Counsel for Mark Meadows Erin Murphy, Counsel for Mark

Meadows Adam S. Ney, Counsel for Appellee

Holly A. Pierson, Counsel for Appellant David J. Shafer

Grant H. Rood, Counsel for Appellee

David J. Shafer, Appellant

Shawn Still, Appellant

State of Georgia, Appellee

George Terwilliger, III, Counsel for Mark Meadows

Terwilliger Law PLLC, Counsel for Mark Meadows

Francis M. Wakeford, IV, Counsel for Appellee

Fani T. Willis, Counsel for Appellee

John W. Wooten, Counsel for Appellee

Daysha D. Young, Counsel for Appellee

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT…………………………  C-1

TABLE OF CONTENTS………………………………………………… i

TABLE OF AUTHORITIES……………………………………………… iii

I.    INTRODUCTION………………………………………………… 1

II.   THE FEDERAL OFFICER REMOVAL STATUTE APPLIES
      TO FORMER FEDERAL OFFICERS  ……………………………  2

III.  THE PRESIDENTIAL ELECTORS WERE FEDERAL
      OFFICERS UNDER THE FEDERAL OFFICER
      REMOVAL STATUTE…………………………………...……..……..  2

   A.    The State's "Fake Elector" Premise Is Affirmatively
         Foreclosed By The Constitution, Federal Law, and
         Supreme Court Precedent …………………………………………  2

   B.    The State Ignores Supreme Court Precedent and Relies on
         Repudiated *Dicta* to Claim That Presidential Electors Act
         Under State, Rather Than Federal, Law………………………  5

IV.   THE DISTRICT COURT ERRED IN DECLINING TO ADDRESS
      MR. SHAFER'S REQUESTS FOR JURISDICTION BASED
      UPON HABEAS AND INJUNCTIVE RELIEF ON
      THE MERITS…………………………………...……..……..…..…..… 10

   A.    Supreme Court Precedent Expressly Permits Appellate
         Review of the District Court's Entire Remand
         Order …………………………………………………………  10

   B.    Because the Remand Order Did Not Address Mr. Shafer's
         Request for Habeas On the Merits, No Certificate of
         Appealability Is Required………………………………………  13

**C.     The Anti-Injunction Act Does Not Apply to Mr. Shafer's Requested Habeas Relief and Expressly Permits His Requested Injunctive Relief………………………………… 15**

**D.     *Younger* Abstention Does Not Apply to Bar Mr. Shafer's Requested Habeas or Injunctive Relief……………………… 17**

**V.     CONCLUSION…………………………………………………… 23**

ii

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                    Page(s)

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) ................................................................. 20, 21

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.*,
   461 U.S. 731 (1983) ....................................................................19

*Bonner v. City of Pritchard*,
   661 F.2d 1206 (11th Cir.1981) ...................................................18

*BP P.L.C. v. Mayor & City Council of Baltimore*,
   141 S. Ct. 1532 (2021)........................................................ 10, 11, 12

*Braden v. 30th Jud. Cir. Ct. of Kentucky*,
   410 U.S. 484 (1973) ....................................................................21

*Bros. Inc. v. W. E. Grace Mfg. Co.*,
   320 F.2d 594 (5th Cir. 1963) ......................................................14

*Burroughs v. United States*,
   290 U.S. 534 (1934) ...................................................................6, 7

*Chiafalo v. Washington*,
   140 S. Ct. 2316 (2020)................................................................6, 7

*Chick Kam Choo v. Exxon Corp.*,
   486 U.S. 140 (1988) ....................................................................16

*Coker v. Amoco Oil Co.*,
   709 F.2d 1443 (11th Cir. 1983) ....................................................1

*Cox v. Louisiana*,
   348 F.2d 750 (5th Cir. 1965) .......................................... 17, 18, 19, 23

*Edwards v. City of Houston*,
   78 F.3d 983 (5th Cir. 1996) ........................................................14

*Est. of Brennan ex rel. Britton v. Church of Scientology Flag Serv. Org., Inc.*,
    645 F.3d 1267 (11th Cir. 2011) ............................................................15

*Ex parte Royall*,
    117 U.S. 241 (1886) ........................................................................21

*Georgia v. Meadows*,
    88 F.4th 1331 (11th Cir. 2023) ...........................................................2

*Gonzales v. Davis*,
    788 F. App'x 250 (5th Cir. 2019) ........................................................14

*Harbison v. Bell*,
    556 U.S. 180 (2009) ................................................................... 13, 14

*Hughes v. Att'y Gen. of Fla.*,
    377 F.3d 1258 (11th Cir. 2004) .................................................... 18, 19

*In re Green*,
    134 U.S. 377 (1890) .......................................................................6, 7

*In re Loney*,
    134 U.S. 372 (1890) ........................................................................22

*In re Neagle*,
    135 U.S. 1 ......................................................................................22

*In re Waite*,
    81 F. 359 (N.D. Iowa 1897) .............................................................22

*Johnson v. Sec''y, Fla. Dep't of Corr.*,
    Case No. 22-12002, 2023 WL 1466599 (11th Cir. Feb. 2, 2023)........................14

*Kolski v. Watkins*,
    544 F.2d 762 (5th Cir. 1977) .............................................................20

*McPherson v. Blacker*,
    146 U.S. 1 (1892) ............................................................................7

*Mitchum v. Foster*,
    407 U.S. 225 (1972) ........................................................................17

*Ohio v. Thomas*,
   173 U.S. 276 (1899) .........................................................................21

*Oregon v Mitchell*,
   400 U.S. 112 (1970) ...........................................................................9

*People of State of New York v. Eno*,
   155 U.S. 89 (1894) ...........................................................................21

*Ray v. Blair*,
   343 U.S. 214 (1952) ...........................................................................6

*Seneca–Cayuga Tribe v. Oklahoma, ex rel. Thompson*,
   874 F.2d 709 (10th Cir.1989) .........................................................19

*Slack v. McDaniel*,
   529 U.S. 473 (2000) ..................................................................... `15

*Smith v. Meese*,
   821 F.2d 1484 (11th Cir. 1987) .......................................................20

*Sycuan Band of Mission Indians v. Roache*,
   54 F.3d 535 (9th Cir. 1994) ............................................................19

*U.S. ex rel. Noia v. Fay*,
   300 F.2d 345 (2d Cir. 1962), *aff'd sub nom Fay v. Noia,* 83 S.Ct. 822 (1963)....21

*U.S. Term Limits, Inc. v. Thornton*,
   514 U.S. 779 (1995) ........................................................................8, 9

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
   516 U.S. 199 (1996) .........................................................................12

*Younger v. Harris*,
   401 U.S. 37 (1971) .............................................................. 17, 18, 19, 20

## Statutes

3 U.S.C. § 15 ......................................................................................3

v

28 U.S.C. § 1442 .................................................................. 7, 11

28 U.S.C. § 1447 ................................................................ 12, 13

28 U.S.C. § 2241 .................................................................... 16

28 U.S.C. § 2251 .................................................................... 16

28 U.S.C. § 2253 ........................................................ 13, 14, 15

28 U.S.C. § 2283 ............................................................ 15, 16

## I.    INTRODUCTION

The Presidential Electors have established that they were federal officers as a matter of constitutional and federal law for purposes of the Federal Officer Removal Statute; that the State's Indictment is completely preempted as to the Presidential Electors by the Supremacy Clause and federal law; and that the district court erred as a matter of law in refusing to decide Mr. Shafer's requests for it to exercise its jurisdiction concerning habeas and injunctive relief.  The State's Response Brief ignores these arguments and authorities, continuing to press the same legal positions and arguments that have been exposed as unsupportable and unsound.  The State's arguments can only be accepted if the Constitution, Supreme Court precedent, precedent from this Court, and the federal Electoral Count Act ("ECA") are wholly ignored.  Because the State's legal positions are definitively foreclosed by these authorities, they must be rejected.

A district court is required to "evaluate all factual issues and questions of controlling substantive law [in a notice of removal] in favor of the [party seeking removal]," *see Coker v. Amoco Oil Co.*, 709 F.2d 1443, 1440 (11th Cir. 1983) (citations omitted), and the district court plainly failed to do that here.  For the reasons set forth in the Opening Brief and herein, the Remand Order should be reversed, and this Court should either grant Mr. Shafer's requested habeas and/or

injunctive relief or remand this case to the lower court to address Mr. Shafer's habeas and injunctive claims on the merits.[1]

## II.   THE FEDERAL OFFICER REMOVAL STATUTE APPLIES TO FORMER FEDERAL OFFICERS.

Appellants addressed the former federal officer issue in their Joint Opening Brief ("Opening Brief"), and they rely on that presentation, including the petition for rehearing *en banc* of co-defendant Meadows attached as an exhibit to the Opening Brief, on this point.   Appellants respectfully request that this Court reconsider its decision in *Georgia v. Meadows*, 88 F.4th 1331 (11th Cir. 2023).

## III.   THE PRESIDENTIAL ELECTORS WERE FEDERAL OFFICERS UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

### A.   The State's "Fake Elector" Premise Is Affirmatively Foreclosed By The Constitution, Federal Law, and Supreme Court Precedent.

The State's foundational argument is that the Republican Presidential Electors were "fake electors" who were "impersonating" the "real" Presidential Electors, s*ee* State Response at 1, 11, 14-16, and that they, therefore, are not federal officers entitled to removal.  *Id.* at 14-16. The State arrives at this position by unilaterally declaring the Governor's certification of the election results on

---

[1] Additionally, should this Court decide to reconsider its ruling in *Meadows* regarding the availability of removal for former federal officers, or should the Supreme Court reverse that ruling during the pendency of this appeal, the district court's order denying Appellants removal under the Federal Officer Removal Statute should be reversed.

November 20, 2020 and December 7, 2020 as legally conclusive as to who Georgia's legitimate Presidential Electors were (i.e., the Democrat electors).  *Id.* at 4, 11, 14.  Ergo, according to the State, all actions taken by the Republican Presidential Electors after these certifications are fake.  The State's foundational position, however, is squarely foreclosed by the ECA.

Under the ECA, a State has only *one way* to conclusively decide for Congress who the State's legitimate Presidential Electors are when there is a dispute – and it is *not* the Governor's certification. Instead, a *state court* must *issue a final ruling on or before the ECA's safe harbor date* (i.e., six days before the Presidential Electors are required to meet and ballot).  *See* Opening Brief at 8-11, 16-17, 27 n.23, 40-45; *see also* JA Vol. I, DS-1 at 40-50.

When the State fails to meet the ECA's safe harbor (as Georgia failed to do in 2020), *the State loses its sole opportunity to determine for Congress who the State's valid Presidential Electors are*.  *See* Opening Brief at 8-11, 16-17, 27 n.23, 40-45.  At that point, the exclusive venue and authority to decide disputes about a state's Presidential Electors is Congress, and Congress is not bound by the State Governor's certification.[2]  *See* Opening Brief at 8-11, 16-17, 27 n.23, 40-45; JA

---

[2] The Governor's certification becomes relevant, if at all, as a tiebreaker at the *end* of Congress' adjudication of multiple ballots on January 6: if both houses cannot agree which is the correct one, Congress defaults in the *end* to the one certified by the Governor.  *See* 3 U.S.C. § 15.  But until the end of Congress' process on January

Vol. I, DS-1 at 40-50.

Because the Governor's certification has no binding effect on Congress in its adjudication of ballots and purported ballots, the Georgia Governor's certifications could not and did not settle the dispute in Georgia as of December 7, 2020. As a result, neither slate of Presidential Electors was presumptively, much less conclusively, valid as of December 7, 2020 or December 14, 2020, when the Presidential Electors were required by federal law to meet and ballot. Indeed, both slates of Georgia's Presidential Electors were contingent as a matter of law until Congress made its decision on January 6, 2021. *See* Opening Brief at 8-11, 16-17, 27 n.23, 40-45.[3]

In spite of its lack of authority or jurisdiction to do so, however, the State's indictment purports to declare the winner of the election dispute in Georgia in 2020 as of December 7, 2020 and to indict the Republican Presidential Electors (whom the State has unilaterally deemed the losers as of that date) for actions taken after December 7 in their exclusively federal roles.[4] The State's invalid declaration of

---

6, the Governor's certification has *no* binding effect and may never become relevant or necessary.

[3] In resolving such disputes, the ECA anticipates and permits submission of *both ballots and purported ballots* for it to consider. *See* Opening Brief at 3-11, 39-45, 50-52. The State has no authority to obstruct Congress in receiving and adjudicating these ballots and purported ballots. *Id.* at 19-20, 45-46, 49-54.

[4] The Indictment charges *no* conduct related to the method of the Presidential Electors' appointment.. JA Vol. I, A.

the Governor's certification of the Democrat slate of electors on December 7, 2020, as conclusive and its attempt to use that false premise to criminalize all actions taken by the Republican Presidential Electors is directly contrary to the Constitution and openly flouts the ECA.

These points and authorities have been briefed numerous times in both the state and federal litigation.[5] Not once, however, has the State addressed or rebutted these facts or legal authorities that affirmatively foreclose its position, and its Response Brief here is no exception.  Indeed, the sum total of the State's "response" is that the Court should, in essence, simply ignore these binding constitutional and federal law provisions.  *See* State Response at 8-9. Unfortunately, the district court erroneously accepted the State's invitation. This Court should not.

### B.   The State Ignores Supreme Court Precedent and Relies on Repudiated *Dicta* to Claim That Presidential Electors Act Under State, Rather Than Federal, Law.

The State's contention that Presidential Electors are state, rather than federal, officers is also incorrect.  Presidential Electors are created by the Constitution, elected by the States, and serve an *exclusively federal function* when

---

[5] *See, e.g.,* Notice of Removal (JA Vol. I, DS-1); Reply Brief to State's Opposition to Removal (JA Vol. III, DS-14); Transcript of Removal Hearing (JA Vol. IV, DS-24); and Opening Brief for the briefings and argument *just* in the federal proceedings.

balloting for President.[5] *See* Opening Brief at 1, 3, 6-7, 14-15, 24-27. The Constitution gives state legislatures the authority to set the *manner and qualifications* of Presidential Electors' *appointment*, but the State's authority ends there. *Id.* at 3 n.2, 5-6, 15, 26-27, 41, 49-50. After Election Day, the State's appointment power is at an end, and only the Constitution and federal law govern the actions of presidential electors and presidential disputes. *Id.* at 3 n.2, 5-6, 15, 26-27, 41, 49-50 Indeed, the Constitution and the Supreme Court are clear that presidential electors exercise only federal authority in meeting and balloting for President. *Id.* at 6-7 (quoting *Burroughs v. United States*, 290 U.S. 534, 545 (1934) ("[P]residential electors . . . exercise federal functions under, and discharge duties in virtue of authority conferred by, the Constitution of the United States.") and *Ray v. Blair*, 343 U.S. 214, 224-25 (1952) ("Presidential electors exercise *a federal function* in *balloting for President and Vice-President*[.]") (emphasis added)). In this federal process, the State has no prescribed role, authority, or interest. *Id.* at 4-6, 26027, 31, 49-50, 53.

The language regarding state authority in the cases upon which the State relies (*Ray v. Blair, Chiafalo v. Washington*, *In re Green,* etc.) [6] simply does

---

[6] In *Ray v. Blair*, 343 U.S. 214 (1952), the Supreme Court upheld Alabama's requirement that Presidential Electors, *as part of their qualification for appointment*, must pledge to vote for the candidate of their respective political party who received the most votes. 343 U.S. at 225. In *Chiafalo v. Washington*, 140 S. Ct. 2316 (2020), the Supreme Court held that States could enforce a Presidential Elector's pledge to

nothing to support its position.  In each case, the Supreme Court was specifically addressing the State's *appointment power* for presidential electors (in which the State has a constitutionally prescribed role under the Electors Clause), *not* the meeting and balloting of Presidential Electors pursuant to exclusive federal authority (in which the State is ousted from any constitutionally prescribed role). *See* Opening Brief at 29-30 and n. 29.[6]  Thus, the Supreme Court's decisions and *dicta* in this materially distinct context of presidential elector *appointment* have no application to or bearing upon whether Presidential Electors were federal officers when they met and cast their ballots for the broad purposes of Section 1442.  *Id.* at 17, 20, 28-30, 35-38.

Additionally, the Supreme Court has specifically repudiated its earlier *dicta* that presidential electors act pursuant to state, rather than federal, authority.  *Id.* at

---

vote for the candidate of the Party for whom the Elector was elected to serve, expressly noting that the ability to enforce these pledges was within a State legislature's appointment power. 140 S. Ct. at 2324.  In *Burroughs v. United States*, 290 U.S. 534, 545 (1934), the Court held that a federal criminal statute requiring disclosure of the amount received and expended by a voluntary political committee to influence election of presidential electors in two or more states was within Congress' power, not an unconstitutional interference with a State's power to appoint Presidential Electors. 290 U.S. at 548.  In *Fitzgerald v. Green*, 134 U.S. 377 (1890) (*In re Green*), the Supreme Court determined that Virginia had the authority to prosecute its *citizens* for fraudulently *voting for* presidential electors because such authority was included in the State's constitutional appointment power.  134 U.S. at 379-80.  And the decision in *McPherson v. Blacker*, 146 U.S. 1, 42 (1892) stands for the unremarkable proposition that State legislatures have authority under the Electors Clause to change the manner in which the State appoints its Presidential Electors.

29-30. In *Oregon v. Mitchell,* 400 U.S. 112 (1970)*,* the Court upheld Congress' right to set the voting age for federal elections. In doing so, the Court relied on the fact that the election of presidential electors is a federal, not state, election. 400 U.S. at 117-18, 125. In the more recent *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 805 (1995), the Court broke even more explicitly with its prior language suggesting authority over constitutionally created federal officers (such as Members of Congress and Presidential Electors) is derived from the states:

> [W]e have noted that *"[w]hile, in a loose sense, the right to vote for representatives in Congress is sometimes spoken of as a right derived from the states*, ... *this statement is true only in the sense that the states are authorized by the Constitution, to legislate on the subject* as provided by § 2 of Art. I." *United States v. Classic,* 313 U.S. 299, 315, 61 S. Ct. 1031, 1037, 85 L. Ed. 1368 (1941).

514 U.S. at 805 (emphasis added). Thus, *Term Limits* made clear that authority over constitutionally-created entities – including Members of Congress and Presidential Electors – is *not* derived from the states but from the Constitution. And the *Term Limits* decision specifically held that States have *no* authority over such entities other than that specifically granted to them by the Constitution. *Id.*[7]

Here, the Constitution, through the Electors Clause, gives states (more specifically, state legislatures) power only over the method of appointing

---

[7] In *Term Limits*, the Supreme Court specifically analogized Presidential Electors to Members of Congress. *See* Opening Brief at 32 n. 27 (quoting *Term Limits*, 514 U.S. at 805).

Presidential Electors.  It does not give them (and under *Term Limits,* they therefore do not have) authority over or any interest in Presidential Elector functions after that appointment power has ended (on Election Day).  The Constitution also does not give states *any* role in resolving disputes over presidential electors after Election Day – those disputes are allocated exclusively to Congress. [8]  So, the notion that Presidential Electors are state officers acting under state authority has now been rejected by Supreme Court precedent.

Remarkably, the State neither acknowledges nor addresses any of these points or authorities.  It does not mention the exclusively federal office and functions that Presidential Electors hold and perform once a state's appointment power ends on Election Day.  It does not address that its cited authorities concern only that appointment power, which is irrelevant to its Indictment. It does not mention, much less attempt to grapple with, *Mitchell* and *Term Limits* or the Supreme Court's rejection of the very position the State takes.

In sum, the Supreme Court has clarified that Presidential Electors are created by the Constitution, derive their authority from the Constitution and federal law, and

---

[8] As noted, Congress delegated by statute a small sliver of its authority to the States through the ECA to permit them to attempt to settle disputes about presidential electors through a final judicial determination if they could do so by the ECA's safe harbor date (which Georgia failed to do in 2020).  But this is a statutory delegation of Congress' exclusive constitutional authority, not authority given by the Constitution itself.

perform an exclusively federal function when they meet and ballot for President. The State's contrary position that they are state, not federal, actors is unsupported and unsupportable.

### IV. THE DISTRICT COURT ERRED IN DECLINING TO ADDRESS MR. SHAFER'S REQUESTS FOR JURISDICTION BASED UPON HABEAS AND INJUNCTIVE RELIEF ON THE MERITS.

#### A. Supreme Court Precedent Expressly Permits Appellate Review of the District Court's Entire Remand Order.

This Court has jurisdiction and authority to review the district court's *entire Remand Order. See BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021) (holding 28 U.S.C. § 1447(d) empowers the appellate courts to review entirety of district court's remand order on appeal). Here, the Remand Order includes the district court's decision not to assert its jurisdiction on the basis of the federal habeas and/or equitable jurisdiction. As such, those issues are properly before this Court on appeal.

The State, however, asks this Court to ignore the Supreme Court's holding in *BP*, arguing, in essence, that the Court did not mean what it said. *See* State's Response Brief at 19.[9] But Justice Gorsuch, writing for the Court in *BP*, could hardly have been plainer. He framed the precise issue before the Court as follows:

---

[9]Alternatively, the State suggests that *BP* limits appellate review to "grounds for removal" and that Mr. Shafer's requests for habeas and injunctive relief are, somehow, not grounds for removal. *See* State Response at 19. Of course, this notion is belied by the record in this case. Mr. Shafer plainly raised his requests that the

> The only question before us is one of civil procedure: Does 28 U.S.C. § 1447(d) permit a court of appeals to ***review any issue in a district court order remanding a case to state court*** where the defendant premised removal in part on the federal officer removal statute, § 1442, or the civil rights removal statute, § 1443.

141 S. Ct. at 1536 (emphasis added).  The Court then answered this question in the affirmative.  *Id.* at 1536-38, 1540.  In so holding, the Court specifically noted that the defendants in that case (like Mr. Shafer here) raised a number of bases for federal jurisdiction in their removal notice, in addition to federal officer removal under 28 U.S.C. § 1442(a), and concluded that this normal practice had no effect on the reviewability of the district court's *entire* remand order:

> "Nor does it matter if (as here) a defendant removes a case 'pursuant to' *multiple* federal statutes. . . . [A] party may assert multiple grounds for removing a case to federal court—as the defendants did here. . . . *[Section] 1447(d) permits appellate review of the district court's remand order—without any further qualification*."

---

district court assert its jurisdiction (i.e., remove the case from state court to federal court) under the habeas statute and under the federal court's injunctive powers in his Notice of Removal, JA Vol. I at DS-1, pp. 1-2, 30-51**,** and the district court's Remand Order declined to assert its jurisdiction on these grounds.  JA Vol. IV at DS-27, pp. 32-35**.**  Additionally, the *BP* Court noted that defendants often invoke multiple federal statutes as grounds for the federal court to assert its jurisdiction, or remove, the case from state court, 141 S. Ct. at 1538, and it rightfully has treated all grounds for the assertion of federal jurisdiction in a removal notice as grounds for removal. *Id.* at 1536-38, 1540.  Under a plain application of *BP*, then, Mr. Shafer's assertions of habeas and equitable jurisdiction are reviewable on appeal.  Even if this were not the case, *BP* made explicit that a district court's entire remand order is subject to appellate review, not merely portions of it.  But this Court need not decide whether there are any parameters limiting the scope of that decision here, where the issues sought to be appealed were raised in the removal notice as jurisdictional grounds for removing the case to federal jurisdiction.

141 S. Ct. at 1538 (emphasis added).

In reaching its holding, the Court emphasized the express language of Section 1447(d) that "*an order* remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title *shall be reviewable by appeal*." *Id.* at 1537 (emphasis added). The *BP* Court further noted that the lower court's remand order had addressed (and rejected) all of the grounds for federal jurisdiction that defendants had raised in their notice of removal. *Id.* It pointed out that the lower court was, in fact, *required* to address all of the grounds for federal jurisdiction asserted by the defendants because "the district court *wasn't at liberty to remove the [removing party's] case from its docket* until it determined that *it lacked any authority to entertain the suit*." *Id.* at 1538 (internal citations omitted) (emphasis added). The Court concluded that the word "order" in Section 1447(d) meant that "the *statute allows courts of appeals to examine the whole of a district court's 'order,' not just some of its parts or pieces*." *Id.* at 1538 (emphasis added); *see also id.* at 1540 ("'[B]ecause it is the [district court's removal] *order* that is appealable,' a court of appeals 'may address any issue fairly included within it.'") (quoting *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (emphasis in the original).[10]

_____

[10] Analogizing its decision in *BP* to its prior decision in *Yamaha*, the Court stated, "*By allowing appellate courts to review a district court's 'order,'* the [*Yamaha*] Court explained, Congress had allowed review of *any issue fairly encompassed*

In short, under the plain language of Section 1447(d) and the decision in *BP*, the entire Remand Order – including its decision not to exercise habeas or equitable jurisdiction in this case – "shall be reviewable by appeal."

> **B.      Because the Remand Order Did Not Address Mr. Shafer's Request for Habeas On the Merits, No Certificate of Appealability Is Required.**

As an initial matter, the statutory requirement for a certificate in habeas cases -- if it applied here -- would only apply to Mr. Shafer's claims for habeas relief. On its face, the statute has no application to requested injunctive relief.

But the certificate requirement does not apply here. Even if the language of Section 1447(d) and the *BP* decision were not dispositive of this Court's authority to review the entire Remand Order, which they are, the certificate requirement of Section 2253(c) does not apply to this Remand Order. Here, the district court did not deny or dismiss the habeas claims on their merits, but instead expressly (but erroneously) declined to address the merits of those claims. JA Vol. IV, DS-27 at 32-35.

In *Harbison v. Bell*, the Supreme Court explained that Section 2253(c)'s certificate requirement applies only to final orders that "dispose of the merits" of a habeas challenge**.** 556 U.S. 180, 183 (2009). "*The key inquiry into whether an order*

---

*within it. That reasoning applies with no less force here.*" *Id.* at 1540 (emphasis added).

is 'final' for [28 U.S.C.] § 2253 purposes is whether it is an order 'that disposes of the merits in a habeas corpus proceeding.'" *Johnson v. Sec'y, Fla. Dep't of Corr.*, Case No. 22-12002, 2023 WL 1466599, at *1 (11th Cir. Feb. 2, 2023) (citations omitted) (emphasis added).

Here, the Remand Order is not a final order on the merits of Mr. Shafer's habeas claims. Indeed, the lower court expressly declined to address the merits of these claims. JA Vol. IV, DS-27 at 32-35. As such, the Remand Order is not a final order for purposes of Section 2253(c), and no certificate of appealability is required. If this Court were to determine, however, that, despite the Supreme Court's decisions in *BP* and *Harbison* and this Court's decisions in *Johnson*, a certificate of appealability is required, it should construe Mr. Shafer's appeal as a request for such a certificate and grant it.[11] *See, e.g., Gonzales v. Davis*, 788 F. App'x 250, 253 (5th Cir. 2019) (construing defendant's appeal as a petition for a Certificate of Appealability) (citing *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc) ("[W]e have oft stated that the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label." (cleaned up)); *cf. Bros. Inc. v. W. E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir. 1963) (same). For the reasons set forth in Appellants' Opening Brief and herein, Mr.

---

[11] Section 2253(c) provides that any Certificate of Appealability shall be issued by *circuit court* justices or judges.

Shafer has made more than "a substantial showing of the denial of a constitutional right," 28 U.S.C. 2253(c)(2), and that at a minimum, "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### C.      The Anti-Injunction Act Does Not Apply to Mr. Shafer's Requested Habeas Relief and Expressly Permits His Requested Injunctive Relief.[12]

As its name and text make plain, the Anti-Injunction Act, 28 U.S.C. § 2283,[13] applies only to requests for *injunctive relief*. As such, it has no application to, and

---

[12] Contrary to the State's representations, the State did not brief or argue the Anti-Injunction Act before the district court, nor did the district court mention or rely upon it in the hearing or in its Remand Order. Appellants, therefore, had no reason to address it in their Opening Brief. The Act was not relied upon by the district court as a reason not to decide Mr. Shafer's habeas or injunctive requests on their merits, and, as set forth herein, for good reason – the Act does not apply to the request for habeas relief at all, and it does not serve as a bar to injunctive relief in this case. If this Court believes, however, that the Act should be addressed in more detail, this matter should be explored by the district court in the first instance on remand to make the necessary findings of fact. *See Est. of Brennan ex rel. Britton v. Church of Scientology Flag Serv. Org., Inc.*, 645 F.3d 1267, 1272 (11th Cir. 2011) ("We review a district court's decision to grant a permanent injunction for an abuse of discretion. However, '*[w]e review the underlying findings of fact for clear error* and conclusions of law de novo.' Whether a district court has the authority to enjoin a state court action under an exception to the Anti–Injunction Act is a question of law that we review *de novo*.") (internal citations omitted) (emphasis added).

[13] "A court of the United States may not *grant an injunction* to stay proceedings in a State court *except* as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (emphasis added).

cannot serve as a bar to, Mr. Shafer's requested pretrial habeas relief under 28 U.S.C. § 2241.[14]

Furthermore, the Anti-Injunction Act specifically authorizes the injunctive relief requested by Mr. Shafer in this case. Indeed, the text of the Act expressly permits a federal court to enjoin state proceedings when doing so is (1) expressly authorized by statute, (2) necessary to aid the court's jurisdiction, or (3) required to protect or effectuate the court's judgment "to ensure the effectiveness and supremacy of federal law." *See* 28 U.S.C. § 2283; *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988).

Here, at the very least, the first ground for enjoining state court processes under the Anti-Injunction Act (an injunction specifically authorized by statute) clearly applies. Injunctions are specifically authorized by the federal habeas statutes. *See* 28 U.S.C. § 2251(a)(1) ("A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, *stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding*.") (emphasis added). Injunctions are also

---

[14] The State attempts to apply the Anti-Injunction Act in the context of Mr. Shafer's request for habeas relief. *See* State Response at 19-20. Because the Act has no application in the habeas context, the State plainly errs in inviting this Court to apply it as a bar to this non-injunctive relief.

provided for under the removal statutes. *See Mitchum v. Foster,* 407 U.S. 225, 234-35 (1972) (noting that the Supreme Court has held that federal courts are empowered to enjoin state court proceedings, despite the anti-injunction statute, under other federal laws, including "legislation providing for removal of litigation from state to federal courts" and "legislation governing federal habeas corpus proceedings.").

In sum, the Anti-Injunction Act by its own text does not apply to the requested habeas relief. And the Act expressly permits, rather than prohibits, the requested injunction of the state court proceedings under these circumstances.[15]

### D.     *Younger* Abstention Does Not Apply to Bar Mr. Shafer's Requested Habeas or Injunctive Relief.

As addressed at length in Appellants' Opening Brief, *Younger* abstention does not apply to bar relief in this case. *See* Opening Brief at 46-50. As the former Fifth Circuit aptly summarized in *Cox v. Louisianna*:

> The general principle, basic to American Federalism, that United States courts usually should refrain from interfering with state courts' enforcing local laws is unassailable. *But the sharp edge of the Supremacy Clause cuts across all such generalizations. When a State, under the pretext of preserving law and order uses local laws,* valid on their face, *to* harass and *punish citizens for the exercise of their constitutional rights or federally protected statutory rights,* the general principle must yield to the exception: *the federal system is imperiled.*

---

[15] An injunction in this case could also be permitted pursuant to the Anti-Injunction Act's second exception for injunctions in aid of the court's jurisdiction.

348 F.2d 750, 752–53 (5th Cir. 1965)[16] (emphasis added).  The court further noted that, in such cases, there is *no federal invasion of states' rights*. "Instead, there is *rightful federal interposition under the Supremacy Clause of the Constitution to protect the individual citizen against State invasion of federal rights*." *Id.* at 753 (emphasis added).

Younger* also recognized that in certain "extraordinary circumstances" a federal court should refuse to abstain even if other factors warrant it. *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1262–63 (11th Cir. 2004) (citing *Younger*, 401 U.S. at 45). This Court has identified some of these extraordinary circumstances, recognizing that a federal court should refuse to abstain if: "(1) there is evidence [the] state proceedings [are] motivated by bad faith,[17] (2) irreparable injury would occur, or (3) there is no adequate alternative state forum where the constitutional issues can be raised." *Id.* at 1263 n.6.  Where, as here, the state criminal proceedings are facially preempted by the Supremacy Clause and federal law and the federal government has exclusive jurisdiction over the matter the State is attempted to prosecute, the irreparable injury exception is satisfied, and *Younger* abstention is not

---

[16] Decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981, are binding on this Court. *See Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

[17] On this record, such bad faith could also easily be inferred, especially in light of the State's utter lack of legal jurisdiction and authority to indict and prosecute the Presidential Electors.

applicable. *Id.* at 1265.[18]

The Supreme Court and other circuit courts have also affirmed that *Younger* abstention principles do not bar federal courts from enjoining state proceedings where they are preempted by the Constitution or federal law and/or the exclusive jurisdiction of the federal government is being encroached upon by the state proceedings.[19]  And, as set forth in his Notice of Removal and Appellants' Opening Brief, Mr. Shafer has definitively established that facial preemption by the Supremacy Clause and federal law here.  JA Vol I at DS-1, pp. 30-51; JA Vol. III,

---

[18] In *Hughes*, this Court determined that state proceedings that are facially preempted satisfied the irreparable injury exception.  In addition, as noted in *Cox*, states have *no legitimate interest* in prosecutions in which they have no authority or jurisdiction and that violate the Supremacy Clause, which is an exception to *Younger* abstention. *See Cox*, 348 F.2d at 752–53 (noting that in such cases, there is no federal invasion of states' rights but instead "*rightful federal interposition under the Supremacy Clause of the Constitution to protect the individual citizen against State invasion of federal rights*") (emphasis added).

[19] *See, e.g., Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 738 (1983) (noting that federal courts may enjoin state court proceedings when the state court action is claimed to be beyond the jurisdiction of the state courts because of federal-law preemption); *Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535, 543–44 (9th Cir. 1994), *as amended on denial of reh'g* (Apr. 28, 1995) (affirming district court's injunction against state's attempted prosecution of illegal gaming because f "*Younger* abstention is *not appropriate in a case in which a state tribunal is acting beyond its authority,*" and district court's injunction did not violate Anti–Injunction Act or *Younger* abstention doctrine) (internal quotations and citations omitted) (emphasis added); *cf. Seneca–Cayuga Tribe v. Oklahoma, ex rel. Thompson,* 874 F.2d 709 (10th Cir.1989) (upholding district court's injunction against state court proceeding seeking to enjoin operation of tribal bingo game because threshold jurisdictional issue of whether state had authority to regulate  was a question of federal, not state, law, and *Younger* abstention was not warranted).

DS-14;Opening Brief at 49-53.[20]

In its response, the State again ignores Mr. Shafer's arguments and cited authority, making no mention or any attempted distinction of *Hughes, Armstrong,* or *Smith,* nor any attempt to address or refute Mr. Shafer's Supremacy Clause and federal preemption arguments. Instead, the State's only response is to incorrectly claim that Mr. Shafer did not cite authority to support his theory that *Younger* does not apply to claims "that federal authority immunizes an individual, like Shafer, from state prosecution." *See* State Response at 21. As is obvious from Mr. Shafer's Notice of Removal and Reply Brief in the district court and the Opening Brief here, however, the State's claim is demonstrably incorrect.

Nor does the State (or the district court) confront or attempt to tackle significant Supreme Court and other federal and state authority demonstrating that pre-trial federal habeas relief[21] from state criminal indictments is available and has been ordered when the State lacks jurisdiction under the Supremacy Clause to bring

---

[20] Appellants also cited to the analogous precedent of *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015), as well as to this Court's relevant decision in *Smith v. Meese*, 821 F.2d 1484, 1491 (11th Cir. 1987), which in turn cited to other Supreme Court and 11th Circuit decisions.

[21] As noted, it is doubtful that *Younger* abstention principles are applicable in the context of habeas relief. *See* Opening Brief at n. 39. Because the *Younger* exceptions are satisfied in this case, reconsideration of the former Fifth Circuit's decision to the contrary is not necessary for this Court to grant that relief here. Should this Court disagree, however, it should clarify or overrule *Kolski v. Watkins*, 544 F.2d 762, 766 (5th Cir. 1977).

any criminal charges against the petitioner, regardless of abstention principles.    *See Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 508 (1973) (Rehnquist, J., dissenting on other grounds) ("The situations in which pretrial or preconviction federal interference by way of habeas corpus with state criminal processes is justified involve the lack of jurisdiction, under the Supremacy Clause, for the State to bring any criminal charges against the petitioner.") (citations omitted); *see also People of State of New York v. Eno*, 155 U.S. 89, 94 (1894) ("When the petitioner is in custody by State authority *for an act done or omitted to be done in pursuance of a law of the United States…* the courts of the United States have *frequently interposed by writs of habeas corpus and discharged prisoners* who were held in custody under state authority.") (quoting *Ex parte Royall*, 117 U.S. 241, 252 (1886)) (emphasis added)) (internal quotations omitted); *Ohio v. Thomas*, 173 U.S. 276, 283 (1899) (upholding issuance of writ to release director of a national soldiers' home in Ohio despite the fact that he had not exhausted his state appeals because he was acting on federal authority and *"[u]nder such circumstances the police power of the state has no application."*) (emphasis added); *U.S. ex rel. Noia v. Fay*, 300 F.2d 345, 354-55 (2d Cir. 1962), *aff'd sub nom Fay v. Noia, 83 S.Ct. 822 (1963), abrogated on other grounds by Wainwright v. Sykes,* 433 U.S. 72 (1977) (noting Supreme Court has upheld issuance of federal habeas writs without requiring the petitioner to first submit to state prosecution and appeals process where the state court had "no

jurisdiction to entertain an action so inseparably connected with the functioning of the National Government"); *In Re Loney*, 134 U.S. 372, 376 (1890) (defendants released pretrial from state custody by federal habeas when state attempted to charge them under state perjury law for their testimony in a contested congressional election because the state court was deprived of jurisdiction under the Supremacy Clause to prosecute exclusively federal conduct); *In re Neagle*, 135 U.S. 1, 99 (1890) (federal officer responsible for protecting federal judge who killed a man in the line of duty was released pretrial from state charges because he was acting under the authority of the law of the United States and, therefore, not liable to answer in the courts of California for murder charges);[22] *In re Waite*, 81 F. 359, 372 (N.D. Iowa 1897) (federal officer released on writ of habeas without having to exhaust state

---

[22] In *Neagle*, California made the same argument that the State makes here:

> [I]t is urged against the relief sought by this writ of *habeas corpus* that the *question of the guilt of the prisoner of the crime of murder is a question to be determined by the laws of California, and to be decided by its courts*, and that *there exists no power in the government of the United States to take away the prisoner from the custody of the proper authorities of the state of California, and carry him before a judge of the court of the United States, and release him without a trial by jury* according to the laws of the state of California.

135 U.S. at 69-70 (emphasis added). Noting that federal habeas is "the result of a long course of legislation forced upon congress by the attempt of the states of the Union to exercise the power of imprisonment over officers and other persons asserting rights under the federal government," *id. at 70,* the Court granted pretrial habeas because the defendant was "acting under the authority of the law of the United States . . . and that he is not liable to answer in the courts of California." *Id.* at 76.

appeals because state criminal laws under which he was charged not applicable to him for acts done in connection with his federal duties).

Plainly, where a state indictment is barred by the Supremacy Clause because it invades exclusive federal jurisdiction or attempts to criminalize an individual's exclusively federal conduct authorized by federal law, the concerns of *Younger* are satisfied, and federal courts, including the Supreme Court, issue pretrial habeas relief. This Court should not permit *Younger* abstention to be improperly erected as a barrier to delay relief from a constitutionally and federally barred state prosecution to which Mr. Shafer is entitled.

Neither *Younger* nor the Anti-Injunction Act require federal courts to stand idly by while a State prosecuting authority encroaches on, usurps, and obstructs exclusive constitutional and federal authority. Indeed, the Supreme Court and this Court have made plain that under such circumstances, pretrial habeas and injunctive relief are *necessary* to preserve and protect the federal system, which is imperiled. *See Cox*, 348 F.2d at 752–53.

## V.    CONCLUSION

This Court should reconsider its decision in *Meadows* and hold that Appellants were federal officers under the Federal Officer Removal Statute. Regardless, however, this Court should reverse the district court's Remand Order with regard to the requested federal habeas and equitable jurisdiction and either grant

that relief or remand this case to the district court with instruction to address it on the merits.

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing Appellants' Joint Reply complies with the Federal Rules of Appellate Procedure and this Court's Rules, including Rule 32's type volume limit because, excluding the portions of the brief that do not count toward the type volume limit, this Joint Reply Brief contains 6,439 words.[1]

Respectfully submitted this the 13th day of May, 2024.

/s/ Holly A. Pierson
Holly A. Pierson
Georgia Bar No. 579655
*Counsel for David J. Shafer*

/s/ Thomas D. Bever
Thomas D. Bever
Georgia Bar No. 055874
*Counsel for Defendant Shawn Still*

/s/ William G. Cromwell
William G. Cromwell
Georgia Bar No. 197240

*Counsel for Appellant Cathleen Latham*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date set forth below, a true and accurate copy of the foregoing Appellants' Joint Reply Brief filed electronically with the U.S. Court of Appeals for the Eleventh Circuit through the Court's ECF system, which will send this filing to all counsel of record.

Respectfully submitted this the 13th day of May, 2024.

*/s/ Holly A. Pierson*
Holly A. Pierson
Georgia Bar No. 579655
*Counsel for David J. Shafer*

*/s/ Thomas D. Bever*
Thomas D. Bever
Georgia Bar No. 055874
*Counsel for Defendant Shawn Still*

*/s/ William G. Cromwell*
William G. Cromwell
Georgia Bar No. 197240

*Counsel for Appellant Cathleen Latham*